Stanley O. King, Esquire
Sharon A. King, Esquire
KING & KING, LLC
231 S. Broad Street
Woodbury, NJ 08096
856-845-3001
856-845-3079 (fax)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT G. JILLARD, | |
| Plaintiff, | |
| v. | Civil Action No.: |
| BAYSIDE STATE PRISON, STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF CORRECTIONS, NJDOC COMMISSIONER GARY M. LANIGAN, ADMINISTRATOR JOHN POWELL, SCO JOHN CALDWELL, and JOHN DOES 1 through 10, individually and/or in their official capacities, jointly, severally and/or in the alternative | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff, Robert G. Jillard, brings this complaint against Defendants and in support thereof allege as follows.

## PARTIES

1.   Plaintiff, Robert G. Jillard, is an adult individual residing in Vineland, New Jersey. At relevant times, he was an inmate at Bayside State Prison.

2. Defendant, Bayside State Prison ("Bayside"), is an adult correctional facility operated and supervised by the New Jersey Department of Corrections. It is located at 4293 Route 47, Leesburg, Cumberland County, New Jersey 08327.

3. Defendant, State of New Jersey, is a governmental entity organized under the Constitution of the United States. Its subdivisions or agencies include the New Jersey Department of Corrections. The New Jersey Office of the Attorney General is located at 25 Market Street, Trenton, New Jersey 08625.

4. Defendant, New Jersey Department of Corrections ("NJDOC"), is a department of the State of New Jersey with the responsibility for maintaining and supervising the state system of correctional facilities, including Bayside State Prison. NJDOC headquarters is located on Whittlesey Road, Trenton, Mercer County, New Jersey 08625.

5. Defendant, NJDOC Commissioner Gary M. Lanigan, at relevant times, was the Commissioner of the New Jersey Department of Corrections. He is responsible for, among other things, the protection of inmates from abuse by facility staff and inmates. At all times mentioned in this Complaint, Lanigan was acting under color of law and color of his authority as Commissioner of NJDOC. He is sued individually and in his official capacity. His business address is Whittlesey Road, Trenton, Mercer County, New Jersey 08625.

6. Defendant, Administrator John Powell is the Administrator of Bayside State Prison. He is responsible for, among other things, the protection of inmates from abuse by staff and other inmates at Bayside State Prison. At all times mentioned in this Complaint,

Powell was acting under color of law and color of his authority as Administrator of Bayside State Prison. He is sued individually and in his official capacity. His business address is 4293 Route 47, Leesburg, Cumberland County, New Jersey 08327.

7. Defendant, SCO John Caldwell, at relevant times, was a Senior Corrections Officer at Bayside State Prison. He is sued individually and in his official capacity. His business address is 4293 Route 47, Leesburg, Cumberland County, New Jersey 08327.

8. Plaintiff is unaware of the true names and capacities of those defendants sued as John Does 1 through 10 and therefore sue these defendants using their fictitious names. Plaintiff will amend this complaint to allege each of the ten unknown other named defendants' true name and capacity when this information becomes known. Plaintiff is informed and believe that these ten unknown other named defendants participated in his beating at Bayside State Prison, and that each of these defendants legally caused his injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, willful, wanton or despicable conduct described below.

## JURISDICTION

9. Plaintiff invokes jurisdiction pursuant to 28 U.S.C. §1331 as the claim raises a federal question under 42 U.S.C. §1983. Plaintiff further invokes supplemental jurisdiction pursuant to 28 U.S.C. §1367 for claims arising under state law as these claims form part of the same case and controversy as the claims brought under 42 U.S.C. §1983.

10. Venue is appropriately laid in the District of New Jersey pursuant to 28 U.S.C. Section 1391(b) as it is the judicial district in which the claims asserted herein arose.

## FACTUAL BACKGROUND

11.     On July 7, 2014 at or around 11:45 a.m., Mr. Jillard was working in the kitchen at Bayside State Prison.  He was stirring a vat in the course of preparing a meal.  Although there were several inmate kitchen workers standing around, SCO Caldwell told Mr. Jillard to stop attending to the vat and take a cart to the back room.

12.     Mr. Jillard acquiesced to SCO Caldwell's order.  As he entered the back room, he was "jumped" by a number of inmates who had apparently been waiting for him.  He managed to escape from the encounter without serious injuries.

13.     Mr. Jillard then returned to the kitchen to continue his job.  At that time, an inmate advised him that SCO Caldwell wanted to see him in Caldwell's office.  As Jillard approached Caldwell's office, a group of inmates under the direction of SCO Caldwell, attacked Mr. Jillard.  The inmates pulled a jumper over Mr. Jillard's face, took him to the ground and began beating him.  SCO Caldwell participated in the beating by holding down Mr. Jillards's head.  Other inmates pinned Mr. Jillard to the ground by holding down his legs and arms, while other inmates repeatedly and brutally punched, kicked, stomped and struck Mr. Jillard.

14.     In the course of the beating, Mr. Jillard heard SCO Caldwell say, "don't hit him in the face."  Mr. Jillard recognized Caldwell's voice as well the scent of the cologne that SCO Caldwell was known to use.

15.     After the beating, SCO Caldwell escorted Mr. Jillard to the prison infirmary.  On the way to the infirmary, Caldwell threatened Jillard to remain quiet about the beating and instructed him to tell the medical staff that he slipped and fell.  Caldwell warned, "you

wont walk out of this prison alive if you don't shut your mouth."  Traumatized by the beating and fearing additional attacks, Mr. Jillard told the medical staff that his injuries were caused by a fall.

16.     Mr. Jillard was evaluated by the prison medical staff, who determined that he needed immediate and advanced medical care.  He was taken by helicopter to AtlantiCare Regional Medical Center, where he was admitted into the intensive care unit.  He underwent surgery for the insertion of a tube in his chest and received other in-patient treatment for four days.  As a result of the beating, Mr. Jillard suffered a collapsed lung, five broken ribs, kidney damage and liver damage.

17.     Two senior corrections officers accompanied Mr. Jillard to the hospital and remained with him during his evaluation and initial treatment.  For the duration of his stay, he was also always guarded by two officers.

18.     When asked by hospital staff how he sustained his injuries, Mr. Jillard responded that he fell.  Hospital staff rejected Mr. Jillard's explanation, telling him that his injuries were consistent with an assault.  One of the surgical staff told Mr. Jillard that he did not believe that Jillard fell because Jillard was "busted up."  Upon discharge, Mr. Jillard was given discharge instructions relating to assault injuries.

19.     While in the hospital, Mr. Jillard was visited by prison officials assigned to the Special Investigations Division ("SID").  He confided to these officers that he was "jumped" by SCO Caldwell and a group of inmates.  He also advised the SID officers that Caldwell warned him not to tell anyone that he was attacked, but instead to state that he slipped and fell.  Mr. Jillard advised the officers that he wanted to file a complaint against SCO

Caldwell. The officers asked whether he was confident that SCO Caldwell was involved in the attack. He assured them that Caldwell was involved because he recognized Caldwell's cologne and his voice. The SID officers assured Mr. Jillard that they would investigate his complaint.

20. Mr. Jillard was discharged from AtlantiCare on July 13, 2014. Rather than being returned to Bayside, he was taken to Southern State Correctional Facility ("Southern State").

21. Mr. Jillard was relieved that he was not returned to Bayside and believed that this change was the result of SID's investigation into his complaint against SCO Caldwell.

22. Upon his transfer to Southern State, Mr. Jillard was initially assigned to the intensive care medical unit. After approximately one week, he was assigned to a downgraded medical unit.

23. While he was a patient at Southern State intensive care unit, Mr. Jillard was again visited and interviewed by a number of SID officers. During the interview they again asked Mr. Jillard to explain why he believed SCO Caldwell was involved in the assault. Mr. Jillard explained that he was familiar with SCO Caldwell's voice and recognized this voice instructing the other attackers not to hit him in the face. He also said he was familiar with the cologne used by SCO Caldwell and recognized the scent of this cologne during the attack. The SID officers assured Mr. Jillard that they were investigating his complaint. They also assured him that they would send a courier with papers necessary for him to file a complaint.

24. By September 16, 2014, the date of Mr. Jillard's release from prison, the papers were not delivered and Mr. Jillard did not see or hear from the SID officers again.

25. On July 10, 2014, while Mr. Jillard was being treated at AtlantiCare, and after he complained of SCO Caldwell's conduct, SCO Caldwell initiated disciplinary charges against Mr. Jillard for "[f]ailure to Follow Safety or Sanitation Regulations." In the charge, SCO Caldwell alleged that Mr. Jillard walked on a wet floor in violation of safety regulations.

26. SCO Caldwell also prepared an incident report stating that he observed Plaintiff carrying a pan when he fell on the wet floor. On July 16, 2014, Mr. Jillard was found guilty of the disciplinary charges.

27. A civilian kitchen employee stated that prior to Mr. Jillard's alleged fall, the kitchen floor was dry. She also stated that she observed Caldwell hosing the kitchen floor after Plaintiff's fall, and he warned her to "mind [her] business" as she did not know what she was "getting into." This employee also stated that an inmate who witnessed the beating told her that "they beat the crap out of Jillard." After reporting her observations and the threat she received from SCO Caldwell to her supervisor, this employee was transferred from Bayside to Ancora Psychiatric Hospital.

28. At no time after his second interview with SID officers, did anyone from Bayside or any division of NJDOC follow up with Mr. Jillard as to the investigation of the unlawful conduct of SCO Caldwell.

29. At all relevant times, Mr. Jillard was in the care, custody and/or control of all defendants, all of whom had a duty to safeguard his well-being and to protect him.

30. At all relevant times, all defendants were acting under color of law and with deliberate and/or reckless indifference to the reasonably foreseeable and/or known substantial risk of attack to inmates such as Mr. Jillard.

31. The deliberately indifferent, conscience shocking, intentional, reckless, careless, negligent, willful and outrageous conduct of all defendants, acting under color of law, included, *inter alia,* the following:

   a. beating, assaulting, intimidating and threatening Mr. Jillard;

   b. failing to investigate or to perform an adequate, complete and reasonable investigation of Mr. Jillard's complaint;

   c. using threats, intimidation, deception, violence and harassment to deter Mr. Jillard from lodging complaints;

   d. failing to provide for Mr. Jillard's basic needs, including the safety of his person;

   e. failing to develop, implement and enforce adequate and reasonable policies regarding the investigation of inmate complaints;

   f. failing to develop, implement and enforce adequate and reasonable policies regarding preventing physical abuse of inmates by other inmates, agents, employees and/or officers of the prison;

   g. failing to develop, implement and enforce adequate and reasonable policies regarding prevention of retaliation upon inmates who lodge complaints;

   h. improperly training officers, agents, representatives and/or employees regarding proper treatment of inmates;

   i. condoning, permitting, encouraging, and/or failing to prevent threatening, harassing, retaliatory, vindictive, violent and/or vengeful conduct;

   j. having, developing, and/or implementing policies which condone, permit, encourage and/or fail to prevent abusive, threatening, harassing, retaliatory, vindictive, violent and/or vengeful conduct;

  k. maintaining a custom, policy and/or practice of failing to discipline officers;

  l. using excessive and unnecessary force on inmates;

  m. engaging in deliberately indifferent and conscience shocking conduct, including, but not limited to, the conduct set forth in subparagraphs (a) through (l) above, and in particular, permitting, planning and/or condoning the attacks of Mr. Jillard and bringing disciplinary action against him after his complaint about SCO Caldwell's unlawful beating.

 32. As a direct and proximate result of the actions of the defendants, Plaintiff suffered severe grievous bodily harm, emotional pain and suffering, and economic losses.

 33. Plaintiff's beating was unprovoked. At no time during his encounter with the defendants, did Plaintiff strike or otherwise assault any of the defendants. He did not resist any lawful commands by SCO Caldwell or interfere with Caldwell's duties that morning. Plaintiff did not consent to the unwarranted touching of his body by Caldwell or his agents.

 34. Upon further information and belief, SCO Caldwell was not suspended or otherwise disciplined for his involvement in the attack on Mr. Jillard.

## FIRST CAUSE OF ACTION
**(Deprivation of Eighth Amendment Rights as to all Defendants)**

 35. Plaintiff adopts and incorporates by reference paragraphs 1 through 34 as if set forth herein at length.

 36. All defendants acted under color of law in engaging in the conduct described above.

 37. The conduct of the defendants as described above violated clearly established law and Mr. Jillard's Eighth Amendment right to be free from the infliction of cruel and

unusual punishment and further constituted a failure on the part of the defendants to protect Mr. Jillard, the violations of which are enforceable pursuant to 42 U.S.C. § 1983.

38. The acts committed by all Defendants as described above were a proximate cause of bodily and emotional injuries to Plaintiff.

39. Plaintiff is entitled to costs, attorney fees and expenses pursuant to 42 U.S.C. §1988 and 28 U.S.C. §2412.

## SECOND CAUSE OF ACTION
### (Eighth Amendment – Supervisory Liability)

40. Plaintiff adopts and incorporates by reference paragraphs 1 through 39 as if set forth herein at length.

41. At the time of the incidents described above, Bayside State Prison, State of New Jersey, New Jersey Department of Corrections, Commissioner Lanigan and Administrator Powell had developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of inmates at Bayside State Prison, which caused Plaintiff's rights to be violated.

42. Defendants Bayside State Prison, State of New Jersey, New Jersey Department of Corrections, Commissioner Lanigan and Administrator Powell have repeatedly and knowingly failed to enforce the laws of the United States and the State of New Jersey pertaining to the care, safety and protection of inmates, thereby creating within Bayside, an atmosphere of lawlessness in which corrections officers employ excessive and illegal force and violence against inmates and threaten, intimidate and deceive inmates. These unlawful acts are condoned and justified by their superiors.

43. At all relevant times, it was the policy, practice and/or custom of Defendants Bayside State Prison, State of New Jersey, New Jersey Department of Corrections, Commissioner Lanigan and Administrator Powell to inadequately supervise and train their corrections officers regarding the lawful use of force and the proper care, safety and protection of inmates. These defendants were aware of, and yet recklessly and deliberately indifferent to the need for additional training, supervision, testing, rules, regulations, policies, procedure, guidelines, directives, investigation and/or discipline relating to: proper treatment and/or handling of inmates; preventing abusive, threatening, harassing, retaliatory, vindictive and/or violent behavior against inmates; and investigating complaints of inmate abuse.

44. These defendants also maintained a custom, policy and/or practice of failing to discipline corrections officers and/or encouraging the aforesaid unlawful behavior.

45. Defendants are aware of Bayside's long and sordid history of inmate abuse. Following the fatal attack of a corrections officer in 1997, hundreds of inmates confined at Bayside filed civil complaints alleging abuse by corrections officers. In a February 25, 2014 article written by Bayside inmate, Latif Lamonte, Lamonte describes a history of "beatings, stompings and set-ups" that inmates at Bayside State Prison were forced to endure during his period of confinement. One of these inmates, Dione Brown, complained that he was assaulted four times on June 28, 2007 by correctional staff after attempting to file an inmate grievance. Another inmate, Lewis Williford, died following a May 2, 2005 beating by corrections officers. More recently, Inmate Terry Forman filed a civil complaint alleging that he suffered physical abuse on February 5, 2013 at the hands

of corrections officers at Bayside. Michael Leski, similarly claimed that he was attacked and assaulted by two corrections officers at Bayside on June 1, 2014. While recovering from injuries associated with his beating, Plaintiff Jillard was also advised that SCO Caldwell had a history of assaulting inmates, and that there must have been some eight inmate complaints filed against Caldwell.

46. Notwithstanding this history of inmate abuse, Bayside State Prison, State of New Jersey, New Jersey Department of Corrections, Commissioner Lanigan and Administrator Powell continue the policy, practice and/or custom of inadequately, improperly and fraudulently investigating inmates' complaints of misconduct on the part of corrections officers. These misconduct are instead tolerated and/or covered-up and officers engaged in the misconduct are not reprimanded or disciplined.

47. As a result of the above-described policies, practices and customs, officers believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be condoned.

48. Consistent with the above-described policies and customs, Defendants willfully and intentionally undertook to protect the officer involved in this incident from civil and criminal liability by covering up the true facts of Plaintiff's injuries. These acts include, but are not limited to:

    a.    The fabricating of evidence;

    b.    Giving false statements regarding the circumstances of Plaintiff's injuries;

    c.    The intimidation of witnesses for the purpose of discouraging these witnesses from giving truthful statements and/or for soliciting knowingly false statements from witnesses; and

    d.    Charging Plaintiff with violating safety regulations.

49. By reason of the aforesaid violation of Plaintiff's rights, Plaintiff is entitled to recover damages under 42 U.S.C. § 1983.

50. Plaintiff is entitled to costs, attorney fees and expenses pursuant to 42 U.S.C.§1988 and 28 U.S.C. §2412.

### THIRD CAUSE OF ACTION
**(Violation of New Jersey Civil Rights Act as to all Defendants)**

51. Plaintiff adopts and incorporates by reference paragraphs 1 through 50 as if set forth herein at length.

52. This cause of action arises under New Jersey Civil Rights Act, N.J.S.A §10:6-2. Supplemental jurisdiction is established pursuant to 28 U.S.C. §1367 as the claim forms part of the same case and controversy as the claims brought under the First and Second Causes of Action.

53. The acts committed by all defendants as described above were a proximate cause of bodily injuries to Plaintiff, in violation of his constitutional rights as previously set forth and enforceable pursuant to N.J.S.A. 10:6-2(c).

54. Plaintiff is entitled to costs, attorney fees and expenses pursuant to N.J.S.A. 10:6-2(f).

**WHEREFORE,** Plaintiffs demand judgment against the defendants, jointly and severally, on all causes of action as follows:

(1) Compensatory and punitive damages in an amount exceeding $1,000,000.00;

(2) Attorneys' fees and costs of this action;

(3) Such other and further relief as the court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedures, the plaintiff demands a trial by jury of this action.

## TRIAL ATTORNEY DESIGNATION

Stanley O. King is hereby designated as trial attorney.

                                    KING & KING, LLC
                                    Attorneys for Plaintiff

                               By:  s/ Stanley O. King
                                    STANLEY O. KING

Dated:  July 7, 2016

JS 44 (Rev. 1/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ROBERT G. JILLARD

**DEFENDANTS**
BAYSIDE STATE PRISON, STATE OF NEW JERSEY, NEW JERSEY DEPT OF CORRECTIONS, NJDOC COMMISSIONER GARY LANIGAN, JOHN POWELL & SCO JOHN CALDWELL.

(b) County of Residence of First Listed Plaintiff  CUMBERLAND
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  CUMBERLAND
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, Email and Telephone Number)*
KING & KING, LLC       stan@kingslaw.com
231 S. BROAD ST.       856-845-3001
WOODBURY, NJ 08096

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983
Brief description of cause:
Plaintiff was assaulted while he was a prisoner at Bayside State Prison in violation of his Eighth Amendment rights.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 07/07/2016
SIGNATURE OF ATTORNEY OF RECORD: /s/ Stanley O. King

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____